# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL G. KEYES,<br><br>        Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK"),<br><br>        Defendant. | CIVIL ACTION<br><br>NO.<br><br>*JURY TRIAL DEMANDED*<br><br>**COMPLAINT** |

Plaintiff Michael G. Keyes, by his undersigned counsel, for his Complaint against defendant National Railroad Passenger Corporation ("Amtrak") avers as follows:

## THE PARTIES

1. Plaintiff Michael G. Keyes is an adult citizen and resident of the State of New Jersey, residing at 968 Kings Highway, Apartment P22, West Deptford, NJ 08086.

2. Defendant National Railroad Passenger Corporation ("Amtrak") is a corporation established by an Act of Congress of October 30, 1970, 84 Stat. 1328 et seq., commonly known as Rail Passenger Service Act of 1970, and amendments thereto, and, at all times material hereto, was engaged in owning and operating a line and system of railroads and railroad properties as a common carrier of goods and passengers for hire in interstate commerce and transportation in, through and between various and several states of the

United States, having a principle place of business located at 30th Street Station, in Philadelphia, Pennsylvania.

## NATURE OF THE ACTIONS, JURISDICTION AND VENUE

3. Mr. Keyes' cause of action against Amtrak arises under the Act of Congress of April 22, 1908, 35 Stat. 65, Chapter 149, and amendments thereto, codified at 45 U.S.C. Section 51 et seq., and commonly known as the Federal Employers' Liability Act (the "FELA").

4. This Court has federal question jurisdiction over Mr. Keyes' FELA action pursuant to 28 U.S.C. §1331. This Court also has jurisdiction over Mr. Keyes' FELA action pursuant to 45 U.S.C. Section 56, which vests the State and Federal Courts with concurrent jurisdiction over FELA claims.

5. This Court has personal jurisdiction over Amtrak, which carries on a continuous and systematic part of its general business within the Southern District of New York.

6. Venue is appropriate in the Southern District pursuant to 28 U.S.C. §1391(b)(1) and (c). Amtrak is subject to personal jurisdiction here and so resides in the Southern District.

## COUNT I
## FEDERAL EMPLOYERS' LIABILITY ACT

7. Mr. Keyes hereby restates and reavers as though fully set forth herein the averments contained in Paragraphs 1 through 6, hereinabove.

8.  Defendant Amtrak was at the time of the accident and injuries herein alleged, and is now, doing business within the jurisdiction of this Court as an interstate common carrier of passengers for hire by rail into and from the various States of the Union and the District of Columbia.

9.  At the time of the accident and injuries herein alleged, Mr. Keyes was employed by Amtrak as a trackman / machine operator and was working in furtherance of interstate commerce.

10. On August 16, 2016, Mr. Keyes was working with his gang at Sunnyside Yard in Long Island City, New York, replacing track panels in the tunnel. Mr. Keyes was the "hook man" and was responsible for attaching chains to the preassembled, 50 foot panels so that front loaders could drag the panels into the tunnel. As the front loader operators lifted a panel, the chains came loose on one end, and Mr. Keyes moved to re-hook the chains. As he did this, several ties came loose from the panel and one or more landed on Mr. Keyes' foot.

11. As a result of the accident, Mr. Keyes suffered a crush injury to his left foot, which required **three surgeries and two courses of physical therapy**, and has left him unable to return to work as an Amtrak trackman / machine operator.

12. At all times hereto, Amtrak owed the duty to its employees, including Mr. Keyes, to act as a reasonable employer to provide Mr. Keyes with a safe place to work, and this duty included the obligation to provide Mr. Keyes with safe and suitable tools and equipment, adequate manpower, adequate supervision, and safe rules, methods and procedures.

13. As part of its duty under the FELA to act reasonably to provide its employees with a safe place to work, Amtrak had an affirmative obligation to inspect its equipment to discover defects, dangerous and unsafe conditions in its equipment and to warn its employees of any defective, dangerous or unsafe conditions.

14. Mr. Keyes's accident and injuries were caused by Amtrak's negligent violation of the Federal Employers' Liability Act in that Amtrak, through its agents, servants and employees:

    (a) Failed to use ordinary care to furnish Mr. Keyes with a reasonably safe place to work;

    (b) Failed to provide Mr. Keyes with the proper tools and equipment to safely perform his job duties;

    (c) Failed to enact and enforce adequate safety rules, methods and procedures;

    (d) Failed to warn Mr. Keyes of the dangers posed by the job task to which he was assigned;

    (e) Failed to properly assemble the track panel, so that the ties did not disconnect from the panel and strike Mr. Keyes' foot;

    (f) Failed to train Mr. Keyes to perform his job tasks safely;

    (g) Failed to provide Mr. Keyes with adequate manpower to safely perform his assigned task; and

    (g) Failed inspect, supervise and oversee Mr. Keyes' job task to discover dangers or insufficiency in the equipment, methods and manpower.

15. Immediately following the accident, Mr. Keyes was transported to Elmhurst Hospital in Queens, NY. X-rays revealed acute fractures of the left first through fourth metatarsals in varying locations and extensive overlying soft tissue swelling. He was taken

to the OR where a surgical fasciotomy and open reduction and internal fixation of the dislocated left first metatarsal was performed. Mr. Keyes remained in-patient until August 22, 2016.

16. On September 2, 2016, Mr. Keyes presented to Dr. Nicholas Taweel at the Rothman Institute for follow up care. Dr. Taweel diagnosed Mr. Keyes with malaligned fractures of the second, third and fourth metatarsals with a plated first metatarsal fracture. The doctor referred Mr. Keyes to Dr. Steven Raiken for a surgical consultation due to the very unstable fracture pattern in his foot.

17. Mr. Keyes was seen by Dr. Raiken on September 2, 2016 for an initial evaluation and consultation. Dr. Raiken reviewed the x-rays taken by Dr. Taweel, which showed evidence of first, second, third and fourth metatarsal fractures, plate fixation of the first metatarsal but no fixation of the second, third and fourth metatarsals. The x-rays also showed that the second and third metatarsal fractures were significantly displaced and angulated in an unacceptable position. Dr. Raiken recommended surgical repair of the fractures.

18. On September 8, 2016, Mr. Keyes underwent a surgical revision of the left first fasciotomy with irrigation and debridement of the fracture and open reduction and internal fixation of the left second, third and fourth metatarsal fractures, performed by Dr. Raiken at the Rothman Orthopaedic Specialty Hospital.

19. Mr. Keyes returned to the Rothman Institute on September 23, 2016 for his first post-operative visit. Mr. Keyes was placed in a temporary splint and advised to begin wearing his CAM boot once he got home.

20. On October 28, 2016, Mr. Keyes returned to Dr. Raiken for post-op follow up. The doctor advised Mr. Keyes to continue wearing the CAM boot and to continue taking his Lyrica, and he referred Mr. Keyes to physical therapy.

21. Mr. Keyes began a course of physical therapy at Classic Physical Therapy and Rehab Center on November 8, 2016. He attended approximately 15 sessions prior to being discharged on April 2, 2017.

22. Mr. Keyes returned to Dr. Raiken on December 12, 2016 for additional follow up. Dr. Raiken renewed the physical therapy prescription and advised Mr. Keyes to continue weightbearing in his CAM boot.

23. On January 9, 2017, Mr. Keyes was fitted for a bilateral custom foot orthotics at the Rothman Institute. The purpose of this brace was to stabilize the foot and ankle complex while providing correction for the deformity.

24. Mr. Keyes was seen again by Dr. Raiken on January 16, 2017. His foot was still swollen with tenderness over the first TMT joint area. Dr. Raiken recommended bone grafting the delayed healing area and exchanging the plate over his metatarsal with one that did not cross the TMT joint area.

25. On February 7, 2017, Mr. Keyes underwent surgery for removal of the trans-articular screw in the right first tarsometatarsal joint, a right first metatarsal non-union takedown bone graft and application of a plate in the first metatarsal region, performed by Dr. Raiken at the Jefferson Surgical Center at the Navy Yard.

26. Mr. Keyes returned to the Rothman Institute on February 27, 2017 for his first post-op visit following the first metatarsal plate exchange and nonunion repair. A bone stimulator was ordered because the first fracture failed to heal with the original surgery, requiring further surgical intervention.

27. Mr. Keyes was again seen by Dr. Raiken on March 10, 2017 for follow up and fitting of the bone stimulator. Dr. Raiken recommended that he use the bone stimulator twice a day over the next month until his next follow up visit.

28. On April 10, 2017, Mr. Keyes returned to Dr. Raiken. The doctor advised Mr. Keyes to remain in his CAM boot and gradually increase his weightbearing and to continue physical therapy for desensitization and strengthening.

29. On April 17, 2017, Mr. Keyes began a second course of physical therapy at Strive Physical Therapy & Sports Rehabilitation. He attended approximately 35 sessions before discharge on October 3, 2017, when it was determined that he was at maximal rehabilitative potential.

30. Mr. Keyes' next follow up visit to Dr. Raiken was on May 22, 2017. The doctor noted that he was at 50% weightbearing and was continuing to attend physical

therapy. Dr. Raiken advised Mr. Keyes to build up his weightbearing to 75% while wearing the CAM boot and to start using his orthotic inserts in his boots or sneakers.

31. On June 19, 2017 and July 17, 2017, Mr. Keyes returned to Dr. Raiken for follow up care. The doctor noted that he continued to have sensitivity over the incision, even with light touch, and mild-to-moderate swelling in the foot. Dr. Raiken advised him to continue with physical therapy, and he supplied Mr. Keyes with a prescription for a muscle stimulator, as recommended by his physical therapist.

32. Mr. Keyes' next visit to Dr. Raiken occurred on August 21, 2017. Dr. Raiken noted that he was using a cane to aid with ambulation, and he continued to have neuritic symptoms. Dr. Raiken opined that Mr. Keyes had plateaued in his healing, and he recommended that Mr. Keyes continue with physical therapy for another month. The doctor also recommended that Mr. Keyes undergo a functional capacity evaluation.

33. On October 2, 2017, Mr. Keyes saw Dr. Raiken for a final visit. At that time, Dr. Raiken advised him that he had achieved maximum medical improvement for his injury, and the doctor placed him on permanent work restrictions.

34. Mr. Keyes continues to experience extreme pain in his left foot.

35. All of the above-described injuries and treatment were caused and necessitated by Amtrak's negligence as averred above.

36. As a further result of defendant Amtrak's negligence as averred above, Mr. Keyes has in the past and will incur in the future substantial medical expenses.

37. As a further result of defendant Amtrak's negligence as averred above Mr. Keyes has endured and will continue to endure serious physical and emotional pain, stress, suffering, immobility, scarring and inconvenience.

38. As a further result of Amtrak's negligence as averred above, Mr. Keyes has been unable to work since the date of the injury, causing him to suffer lost wages and benefits, and he may have sustained a diminished earning capacity.

WHEREFORE, Plaintiff Michael G. Keyes demands judgment in his favor and against defendant National Railroad Passenger Corporation for compensatory damages in an amount to be determined by the jury, together with interest, costs, attorneys' fees and such other and further relief as the Court and Jury shall deem appropriate.

Respectfully submitted,

THE MYERS FIRM

By: _____
William L. Myers, Jr., Esquire
NY Attorney ID No. 568593
1515 Market Street, Suite 810
Philadelphia, PA 19102
(215) 988-1229

800 Second Avenue, Suite 301
New York, NY 10017
(888) 290-6888
bill@MFLaw.com

*Attorneys for Plaintiff
Michael Keyes*

Dated: 1-18-18